UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN UPSHAW, | * |
| Petitioner, | * |
| v. | * Civil Action No. 16-cv-12442-ADB |
| JOSEPH MURPHY, | * |
| Respondent. | * |

**MEMORANDUM AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS**

BURROUGHS, D.J.

On June 26, 2013, Petitioner Kevin Upshaw ("Petitioner" or "Upshaw") was convicted of three counts of uttering a false document (Counts 3, 4, and 7), perjury by false written statement (Count 5), and attempted larceny (Count 8). [Supplemental Answer ("S.A.") at 104–11]. The charges against Upshaw resulted from his attempt to lay claim to certain trust assets that had gone unclaimed for more than twenty years by presenting a forged will to the Unclaimed Property Division of the Massachusetts State Treasurer's Office. Upshaw was sentenced to four to five years on the perjury conviction, a concurrent term of two to three years for the uttering convictions, and a concurrent term of two and a half years on the attempted larceny conviction. [S.A. at 15]. Before the Court is Upshaw's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1]. For the reasons explained herein, Upshaw's petition for a writ of habeas corpus is <u>DENIED</u>.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In habeas cases, state courts' "factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." <u>Rashad v. Walsh</u>,

300 F.3d 27, 35 (1st Cir. 2002) (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). The Massachusetts Appeals Court ("Appeals Court") provided an account of the facts, which is reproduced below. See Commonwealth v. Upshaw, 55 N.E. 3d 433 (Table), 2016 WL 4087932, at *1–4 (Mass. App. Ct. Aug. 2, 2016).

> Dr. Rose Jannini, of Winthrop, died on April 16, 1986; the executor of her estate probated her will in the Probate and Family Court in 1988, valuing Jannini's estate at roughly $1.24 million.[1, 2] The executor did not take any further action, and the bulk of Jannini's estate eventually was turned over to the Unclaimed Property Division of the State Treasurer's Office located in One Ashburton Place in Boston (Treasurer's Office).
>
> On March 15, 2010, [Upshaw] went to the Treasurer's Office to make a claim on property from Jannini's thirty year old estate. He asserted that he had been sent from the Probate and Family Court, although he did not provide any documentation from the court at that time. [Upshaw] did present to the paralegal stationed at the counter of the public reception area, a document he alleged to be Jannini's 1984 last will and trust. According to that document, the trustee at the time of Jannini's death was Ruth Hamlin Greer; however, because Greer was deceased, [Upshaw] had become the sole trustee and beneficiary of the remainder of Jannini's estate. The paralegal asked [Upshaw] how he was related to Jannini and the response was "very vague. He said that he was nominated. Nothing very specific." She thought that [Upshaw's] presentation "didn't make much sense." In addition, [Upshaw] appeared agitated and complained about his parking fees, encouraging the paralegal to "speed ... up ... the process [and] give him claim forms." As a result, the paralegal consulted Thomas McAnespie, Unclaimed Property Administrator for the Commonwealth. McAnespie instructed [Upshaw] to return to the Probate Court to obtain appropriate documentation.
>
> On April 6, 2010, [Upshaw] petitioned the Probate Court to become successor trustee; on June 29, 2010, a judge of the Probate Court issued a decree making the appointment. In July, 2010, [Upshaw] returned to the Treasurer's Office with that decree. Although he again asked for "claim forms," he was not provided with them. McAnespie subsequently received a letter from [Upshaw], dated September 24,

---

[1] In footnote three the Appeals Court stated, "The will instructed that the 'residue and remainder' of Jannini's property (after certain tangible personal property and cash were distributed to the executor and his wife, Jannini's cousin) be placed into the Jannini Foundation Trust; the only trust document included in this record is the disputed 1984 'Declaration of Irrevocable Trust of the Jannini Family Trust' presented by [Upshaw]."

[2] In footnote four the Appeals Court stated, "A redacted copy of the will was admitted in evidence at trial; the Probate Court's acknowledgment on the will accepting the instrument as genuine was redacted after partial allowance of [Upshaw's] motion in limine."

2

> 2010, with a copy that purported to be the 1984 last will and testamentary trust of the testator Rose Jannini, and accompanying list of trust assets. The letter requested that the Treasurer compare the documents to determine that the unclaimed property held was, indeed, the same as the listed assets from Jannini's estate. [Upshaw] also stated he would schedule a meeting at McAnespie's office once the assets had been confirmed, and after he had hired an attorney to assist with the reclaiming process. On October 28, 2010, [Upshaw] was arrested on a warrant in the lobby of One Ashburton Place, presumably when he was on his way to meet with McAnespie.
>
> At trial, State police Officer David Crowther testified that he executed a search warrant at [Upshaw's] residence in Millbury; officers seized from a large plastic container located in the basement several notary seals engraved with various names and states of issue. One seal, in particular, was engraved with the name Marlene Siegel, the person who purportedly had notarized the 1984 will and trust document [Upshaw] had presented to the Probate Court in connection with his successor trustee petition; he also presented the same document later in the Treasurer's Office. Crowther testified that, as part of his investigation, he had obtained from the State of Connecticut a copy of Siegel's application for appointment as notary public; it was dated June, 1988, four years after she appeared to have notarized the 1984 will.[3]

Id. at *1–2.

On November 18, 2010, a Suffolk County grand jury indicted Petitioner on three counts of forgery, three counts of uttering a false document, one count of perjury, and one count of attempted larceny. [S.A. at 104–11]. In 2013, the Commonwealth filed a motion in limine to admit certain documentary evidence, including a will dated April 16, 1986 with Dr. Jannini's signature ("the 1986 Will") that had been probated in the Suffolk County Probate Court in 1988. [Id. at 156–59]. Petitioner filed a competing motion in limine to exclude the 1986 Will pursuant to the Confrontation Clause. [Id. at 160–62]. During a pre-trial hearing, the Commonwealth and Upshaw agreed to redact from the 1986 Will any indication that it had been accepted by the Probate Court as genuine and to

---

[3] In footnote five the Appeals Court stated, "Crowther also testified at [Upshaw's] trial that the appraisal of trust assets contained in the Probate Court file of the 1988 will petition, which he personally obtained from the court, and the asset list attached to [Upshaw's] September 24, 2010, letter sent to McAnespie, 'appear to be exactly the same.'."

3

stipulate that the 1986 Will was entered at the Probate Court.  See [S.A. 167–71].  At that hearing, Upshaw preserved an objection to the 1986 Will being admitted because the testator was unavailable to be cross examined.  [ECF No. 18 at 20–21; ECF No. 25 at 1–2].  At trial, Petitioner did not object to the admission of the redacted will.  Upshaw, 2016 WL 4087932, at *2.

Petitioner was convicted of the uttering, perjury, and attempted larceny charges on June 26, 2013.  [S.A. at 214–18].  On August 2, 2016, the Appeals Court affirmed the convictions.  Upshaw, 2016 WL 4087932, at *4.  The Supreme Judicial Court denied further appellate review on November 4, 2016.  [S.A. at 21].

On December 1, 2016, Petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254.  [ECF No. 1].  Upshaw claims that the trial court violated his right to confront witnesses against him by failing to obtain his consent or to advise him of the consequences of the stipulation about the admissibility of the 1986 Will.  [Id. at 5, 7].  On September 13, 2017, Respondent filed a memorandum of law opposing the habeas petition.  [ECF No. 31].

## II. STANDARD OF REVIEW

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA permits a federal court to grant habeas relief after a final state adjudication of a federal constitutional claim only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent and arrives at a different conclusion. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision is considered an "unreasonable application" of Supreme Court precedent if the state court identifies the correct legal rule but unreasonably applies it to the facts. Id. at 413. An unreasonable application requires "some increment of incorrectness beyond error." Norton v. Spencer, 351 F.3d 1, 8 (1st Cir. 2003) (quoting McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)). The state court decision is "unreasonable if it is devoid of record support for its conclusions or is arbitrary." Id. (quoting McCambridge, 303 F.3d at 37). Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

## III. DISCUSSION

The essence of Upshaw's claims is that the trial court did not obtain his informed consent concerning the stipulation about the admissibility of the 1986 Will and that admitting that document deprived him of his right to confront witnesses against him. First, Upshaw objects to the lack of a "colloquy or effort by the trial-judge on the record to ensure that the petitioner was aware of the nature and consequences of" stipulated evidence. [ECF No. 25 at 2]. Upshaw relies on Supreme Court precedent that requires a trial judge to "indulge every reasonable presumption against waiver of fundamental constitutional rights," such as the right to be represented by counsel, "to protect an accused from conviction resulting from his own ignorance of his legal and

5

constitutional rights." Johnson v. Zerbst, 304 U.S. 458, 464–65 (1938); see also Brookhart v. Janis, 384 U.S. 1, 7–8 (1966) (holding that counsel could not surrender his client's right to plead not guilty and to confront witnesses against him where his client had expressed the desire to plead not guilty in open court). Here, Upshaw's constitutional rights, including his right to counsel and to a trial at which the Commonwealth was put to its burden of proof, were not infringed. The stipulation at issue was agreed to by Upshaw's counsel, who by all accounts provided adequate assistance, and there is no constitutional right that requires a trial judge to engage in a colloquy with a defendant before accepting a stipulation like the one at issue here.[4]

Second, to the extent Upshaw claims that his Confrontation Clause rights were violated by the admission of the redacted 1986 Will, he has not shown that its admission into evidence was contrary to or an unreasonable application of clearly established federal law. Upshaw stipulated that the 1986 Will was entered at Probate Court, but the Court accepts for purposes of this motion that his counsel maintained his Confrontation Clause objection to the admission of the 1986 Will under Crawford v. Washington, 541 U.S. 36, 53–54 (2004).[5] [ECF No. 18 at 20–21].[6]

---

[4] Although the Commonwealth has not raised this argument, it appears that the trial court would have been free, at least in so far as the Due Process Clause is concerned, to take judicial notice of the fact that the 1986 Will was entered at the Probate Court and to do so with or without discussing the issue with Upshaw or his counsel. See Fed. R. Evid. 201(b)(2).

[5] Prior to 2016, in Massachusetts, a party's objection at the pre-trial stage was sufficient to preserve his or her appellate rights if the party sought through a motion in limine to preclude evidence on constitutional grounds. Commonwealth v. Whelton, 696 N.E.2d 540, 543 (Mass. 1998). Here, Petitioner objected to the admission of the 1986 Will on constitutional grounds during the pre-trial hearing, arguing that the admission would violate the Confrontation Clause. [ECF No. 18 at 20–21].

[6] During the pre-trial conference, the following conversation occurred:

As the Supreme Court held in Crawford and reaffirmed in Davis v. Washington, 547 U.S. 813, 822 (2016), the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Crawford, 541 U.S. at 53–54. In Crawford, the Supreme Court said that there are "[v]arious formulations" of what statements fell within the "core class" of testimonial evidence, including "ex parte in-court testimony or its functional equivalent"; "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51–52. Two years later, in Davis, the Supreme Court clarified that, at least in the context of statements made during police interrogations, statements are testimonial if the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. at 822.

As the Supreme Court itself acknowledged in Crawford, and as remains true under Davis and its progeny, there remains room for reasonable disagreement among trial court judges about the precise bounds of testimonial evidence. See Crawford, 541 U.S. at 68 n.10 ("We

---

> Prosecutor Goldberger: . . . [W]e could just stipulate that this Will was presented to the Probate Court in 1986, and we won't even say, you know, what the final decision was.
> The Court: Okay, I think that's fine. That takes care of it.
> Defense Counsel Moss: Well, I still have, my objection is that Mr. Upshaw will not be able to cross examine anybody associated with this Will. And of course the Testator is not here. . . .
> . . .
> The Court: Great. And I don't think *Crawford* applies to either the '86 Will or the '84, you know, I don't think it applies. Okay, great, that takes care of the issue.

[ECF No. 18 at 20–21].

acknowledge THE CHIEF JUSTICE's objection . . . that our refusal to articulate a comprehensive definition in this case will cause interim uncertainty."). What is clear from the Supreme Court is that "[w]hatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68. In elaborating on what other statements might unambiguously qualify as testimony, the First Circuit has stated "that, in determining whether a statement is testimonial, a court should consider whether 'an objectively reasonable person in [the declarant's] shoes would understand that the statement would be used in prosecuting [the defendant] at trial.'" United States v. Castro-Davis, 612 F.3d 53, 65 (1st Cir. 2010) (quoting United States v. Maher, 454 F.3d 13, 21 (1st Cir. 2006)).

Here, the redacted 1986 Will is not clearly testimonial under Crawford or subsequent case law. Although the 1986 Will is a formalized document that one would expect to be presented to a court and Dr. Janini was unavailable to testify, it falls outside the "core class" of testimonial evidence in that it does not reflect prior testimony given at a hearing or statements made during a police investigation, which are the only categories of testimonial evidence that the Supreme Court has unambiguously established. See Crawford, 541 U.S. at 51–52, 68. The trial court's determination that the will was not testimonial was therefore not "contrary to . . . clearly established" Supreme Court precedent. See 28 U.S.C. § 2254(d). The trial court's rejection of Petitioner's Confrontation Clause argument was likewise not "an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court" because no objectively reasonable person in Dr. Jannini's position would have anticipated that the will would be used in a criminal prosecution. See id.; Castro-Davis, 612 F.3d at 65. Further, Petitioner has not argued that the trial court made an "unreasonable determination of the facts in light of the evidence

presented." See 28 U.S.C. § 2254(d). Petitioner has therefore failed to meet the requirements for a writ of habeas corpus under AEDPA.

## IV. CONCLUSION

For the reasons stated therein, the Court hereby DENIES Petitioner Kevin Upshaw's petition for a writ of habeas corpus. [ECF No. 1]. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing Section 2254, Cases, R. 11(a). The Court declines to grant a certificate of appealability in this instance.

**SO ORDERED.**

July 17, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE